**In the Interest of W.B., Jr., a child.**

**No. 68386.**

Supreme Court of Iowa.

Jan. 19, 1983.

Thomas J. Miller, Atty. Gen., and Brent D. Hege, Asst. Atty. Gen., for appellant.

Francis C. Hoyt, Jr., Appellate Defender, and Jay A. Tentinger, Asst. Woodbury County Public Defender, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

In this interlocutory appeal, the State challenges an order of the juvenile court committing W.B., Jr., a sixteen-year old, to the Iowa Security Medical Facility at Oakdale for evaluation under Iowa Code section 232.49(3). After filing a delinquency petition against the juvenile accusing him of the offenses of kidnapping, robbery, and sexual abuse, the State filed a motion asking the juvenile court to waive its jurisdiction to allow criminal proceedings to be instituted. The juvenile responded by filing an application for a psychological and psychiatric evaluation, to be used in preparation of his resistance to the State's motion to transfer the case to adult court. He requested the evaluation take place at the Iowa Security Medical Facility at Oakdale. After hearing, the court committed the juvenile to Oakdale for evaluation. The State sought and obtained leave for interlocutory appeal. We reverse and remand.

■ Our review in juvenile matters is de novo. *In Interest of Blackledge*, 304 N.W.2d 209, 210 (Iowa 1981); *In Interest of Wheeler*, 229 N.W.2d 241, 243 (Iowa 1975).

The State contends the order for evaluation is invalid on several statutory and policy grounds. It points to Iowa Code section 223.4, which provides the general criteria for admission to the Oakdale facility, and argues that a juvenile does not qualify. It points also to a federal statute, 42 U.S.C. §§ 5633(12) and (13), establishing certain criteria for states receiving certain federal

funds (which Iowa does), and argues that mixing juveniles with adult occupants of Oakdale would endanger future funds. Moreover, the State argues, several juvenile-law statutes, as well as a clearly expressed state policy regarding separation of juvenile offenders, have been violated by the order.

We believe the authority of the juvenile court to order such evaluations is clearly circumscribed by our juvenile justice act, Iowa Code chapter 232, and that this proposed evaluation is not authorized. It is unnecessary to address the application of the other federal and state statutes.

The State concedes this juvenile might well be a proper subject for examination at Oakdale, particularly in view of his long juvenile record and history of assaults and escapes. It argues, however, that commitment to Oakdale should be done only after a waiver to district court is ordered; to do so while the child is still in juvenile court, as the court did here, would be improper and would establish a precedent allowing commitment of any juvenile, even those without histories of escape or assaultive conduct, to such facilities. It argues that an adequate alternative would be to confine the juvenile to another facility, such as the Cherokee Mental Health Institute or the Eldora Training School, and provide for his examination there by visiting doctors.

The general rule for construing our juvenile justice act is provided by Iowa Code section 232.1:

This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in his or her own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state. When a child is removed from the control of his or her parents, the court shall secure for the child care as nearly as possible equivalent to that which should have been given by the parents.

■ Because, under section 232.1, a child removed from the home must be given "care as nearly as possible equivalent to

that which should have been given by the parents," the least severe alternative, in terms of possible harmful effects to the child, should be adopted in ordering a physical or mental examination. The statutory preference for use of the least severe alternative is also implied in Iowa Code section 232.49(3), which requires a stronger showing of need for examination of a juvenile as an inpatient than as an outpatient. We keep this general precept in mind in examining the impact of chapter 232 under the facts of this case.

■ Iowa Code section 232.49(3) establishes the criteria and procedure for ordering a mental examination of a juvenile:

At any time after the filing of a delinquency petition the court may order a physical or mental examination of the child if the following circumstances apply:

a. The court finds such examination to be in the best interest of the child; and

b. The parent, guardian or custodian and the child's counsel agree.

An examination shall be conducted on an out-patient basis unless the court, the child's counsel and the parent, guardian, or custodian agree that it is necessary the child be committed to a suitable hospital, facility or institution for the purpose of examination. Commitment for examination shall not exceed thirty days and the civil commitment provisions of chapter 229 shall not apply.

The criteria for an *outpatient* examination of this juvenile were met in this case: the court found that an examination was in the best interest of the child, and the custodial parent consented to it. The criteria for an *inpatient* examination, however, were not satisfied. While the court and the child's counsel agreed it was "necessary" the child be committed for examination, the record shows the examination could not be completed in 30 days as required by section 232.49(3); in fact, it would likely take 60 days or longer.

The juvenile argues that the 30-day limit for completion of the examination, under section 232.49(3), is not mandatory and, if it would take longer, an extension could be requested. And, as the juvenile court concluded, the 30-day period was "for the benefit and not the detriment of the minor," according to him. We do not believe a 30-day period, with the possibility of an extension, is consistent with the rationale of section 232.49(3). The section requires prompt completion of the examination and provides no means of extending the 30-day limit. The argument that the time limit was intended to be a benefit, not a detriment, to the minor assumes that denying the minor access to Oakdale is a detriment. First, we do not believe this is a sound basis for ignoring the plain language of the statute. Second, we do not believe, under this record, that commitment to Oakdale, even though requested by the minor, would be beneficial to the child, or that its denial would be detrimental.

Moreover, the medical facility at Oakdale is not a "suitable hospital, facility or institution" under section 232.49(3), because it would admittedly not separate juveniles from its adult population. While a "suitable" facility is not defined under chapter 232, it is clear that a facility mixing juvenile and adult offenders would not qualify. For example, the act provides for pre-disposition detention under closely-drawn limitations, one of which is that "the child is confined in a room entirely separated from adults." Iowa Code § 232.22(2)(c)(4). The legislative intent that adult and juvenile populations not be mixed is further apparent from a statute governing operation of county jails:

> Any sheriff, city marshal, or chief of police, having in his or her care or custody any prisoner under the age of eighteen years, shall keep such prisoner *separate and apart,* and prevent communication by such prisoner with prisoners above that age, while such prisoners are not under the personal supervision of such officer, if suitable buildings or jails are provided for that purpose, unless such prisoner is likely to or does exercise an immoral influence over other minors with whom he or she may be imprisoned.

> A person under the age of eighteen years prosecuted under chapter 232 and not waived to criminal court shall be confined in a jail only under the conditions provided in chapter 232.

> Any officer having charge of prisoners who without just cause or excuse neglects or refuses to perform the duties imposed on him or her by this section may be suspended or removed from office therefor.

(Emphasis added.) Iowa Code section 356.-3.[1]

We conclude the order of commitment was entered without authority and that it must be reversed.

REVERSED AND REMANDED.

1. There is another problem with the order for inpatient examination of this juvenile not specifically addressed by the parties: the custodial parent's consent was limited merely to an examination; it did not specifically show her "agree[ment] that it [was] necessary the child be committed," for purposes of that examination, as required by the last unnumbered paragraph of section 232.49(3).